Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 28 2014, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**CHRISTINA D. PACE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.S., D.S., and N.S., MINOR CHILDREN, AND THEIR FATHER S.S., | ) ) ) ) ) ) |
| S.S., | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 49A02-1312-JT-1051 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause Nos. 49D09-1211-JT-43374, 49D09-1211-JT-43375, 49D09-1211-JT-43376

**July 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Appellant-Respondent S.S. ("Father") appeals the juvenile court's order terminating his parental rights to K.S., D.S., and N.S. (collectively, the "Children"). On May 20, 2010, the Department of Child Services ("DCS") filed a petition alleging that the Children were children in need of services ("CHINS") and removed the Children from Father's and K.S.'s ("Mother") care. The CHINS petition stated that DCS became involved with the family after receiving allegations of educational neglect, drug use, domestic violence, physical abuse, and rape. The petition also alleged that Mother failed to cooperate with the DCS investigation and refused to allow DCS to assess the Children's safety. The Children were adjudicated to be CHINS on November 9, 2010.

DCS filed a petition seeking the termination of Father's parental rights to the Children on November 7, 2012. Following a two-day evidentiary hearing, the trial court issued an order terminating Father's parental rights to the Children. On appeal, Father contends that DCS did not provide sufficient evidence to support the termination of his parental rights. We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and Mother were involved in a long-term romantic relationship and are the

parents of the Children.[1]  K.S. was born on February 19, 2005, D.S. was born on July 14, 2006, and N.S. was born on December 30, 2007.  DCS filed a petition on May 20, 2010, alleging that the Children were CHINS.  In this petition, DCS alleged that Father and Mother failed to provide the Children with a safe and appropriate living environment.  Specifically, DCS stated that it had received eight reports of abuse and neglect concerning the family since February of 2010, including allegations of educational neglect, drug use, domestic violence, physical abuse, and rape.  DCS also stated that it experienced a lack of cooperation from Mother with the DCS investigation and a refusal by Mother to allow DCS to assess the Children's safety.  DCS also noted the substantial history of domestic violence between Father and Mother.  Also on May 20, 2010, the Children were removed from Father's and Mother's care and have not been returned to Father's care since that date.

On November 9, 2010, the juvenile court adjudicated the Children to be CHINS.  The juvenile court issued a dispositional order and parental participation decree on January 4, 2011, in which it ordered Father to participate in certain services.  Specifically, Father was ordered to (1) remain in contact with the DCS family case manager; (2) obtain and maintain suitable housing; (3) secure and maintain a legal and stable source of income; (4) formulate and put in place a protection plan which protects the children from further physical and/or sexual abuse; (5) establish paternity of the Children; (6) notify DCS of any changes in address, employment, telephone number, and household composition; (7) participate in and successfully complete home-based counseling; (8) complete a parenting assessment and

[1] The termination of Mother's parental rights to the Children is not at issue in this appeal.  In addition, Father and Mother are also the parents of two other children.  Their parental rights to these other children are

3

successfully complete all recommendations developed as a result of the assessment; (9) complete a psychological evaluation; (10) participate in and successfully complete a drug and alcohol assessment and successfully complete all recommendations developed as a result of the assessment; (11) participate in a program addressing issues of domestic violence; and (12) visit with the Children on a consistent, regular basis. Father did not complete the services ordered by the juvenile court. On November 7, 2012, DCS filed a petition seeking the termination of Father's parental rights to the Children.

On November 12 and 13, 2013, the juvenile court conducted an evidentiary termination hearing at which Father appeared telephonically and was represented by counsel. During the termination hearing, DCS introduced evidence relating to continued concerns regarding Father's inability or refusal to properly care for the Children and his failure to participate in or benefit from the services offered by DCS. Specifically, DCS presented evidence demonstrating a long history of domestic violence between Father and Mother; that Father, by the age of thirty-three, had amassed a relatively lengthy criminal history; that Father had failed to complete the services ordered by the juvenile court; and that Father had shown an apparent lack of interest in caring for or visiting with the Children, whom he had not seen since February of 2011. DCS also introduced evidence indicating that the termination of Father's parental rights was in the Children's best interests and that its plan for the permanent care and treatment of the Children was adoption. Father acknowledged that, at the time of the evidentiary hearing, he was not in a position to provide adequate care and supervision for the Children. However, he presented evidence which he claimed

not at issue in the instant appeal.

4

demonstrated that he was beginning to make progress and, as such, should be given more time before his parental rights were terminated. Following the conclusion of the termination hearing, the juvenile court issued an order terminating Father's parental rights to the Children. Father now appeals.

## DISCUSSION AND DECISION

The Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005). Further, we acknowledge that the parent-child relationship is "one of the most valued relationships of our culture." *Id*. However, although parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his responsibility as a parent. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Therefore, parental rights are not absolute and must be subordinated to the children's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *Id*.

The purpose of terminating parental rights is not to punish the parent but to protect the children. *Id*. Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id*. The juvenile court need not wait until the children are irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id*.

Father contends that the evidence presented at the evidentiary hearing was insufficient to support the juvenile court's order terminating his parental rights. In reviewing termination

proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id*. First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id*.

In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id*. A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it. *Id*. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *Id*.

In order to involuntarily terminate a parent's parental rights, DCS must establish by clear and convincing evidence that:

> (A) one (1) of the following exists:
> (i) the child has been removed from the parent for at least six (6) months under a dispositional decree;
> (ii) a court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made; or
> (iii) the child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of

6

services or a delinquent child;

    (B)  that one (1) of the following is true:

        (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

        (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

        (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

    (C)  termination is in the best interests of the child; and

    (D)  there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2011). Father does not dispute that DCS presented sufficient evidence to support the first and fourth elements set forth in Indiana Code section 31-35-2-4(b). Father, however, does claim that DCS failed to establish the second and third elements that are required to be proven before a court can order the involuntary termination of a parent's parental rights. Specifically, Father argues that DCS failed to establish either that (1) there is a reasonable probability that the conditions that resulted in the Children's removal from or the reasons for their continued placement outside of his home will not be remedied, or (2) the Children have been adjudicated to be CHINS on two separate occasions. Father also argues that DCS failed to establish that termination of his parental rights is in the Children's best interests.

### I. Whether DCS Presented Sufficient Evidence to Prove the Second Element That Is Required to Be Proven Before a Court May Order the Involuntary Termination of One's Parental Rights

On appeal, Father argues that DCS failed to establish by clear and convincing evidence that (1) the conditions resulting in the Children's removal from and continued placement outside his care will not be remedied, or (2) the Children had been adjudicated

CHINS on two separate occasions. Father, however, does not challenge the juvenile court's determination that DCS established by clear and convincing evidence that the continuation of the parent-child relationship poses a threat to the Children.

It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find *either* that (1) the conditions resulting in removal from or continued placement outside the parent's home will not be remedied, (2) the continuation of the parent-child relationship poses a threat to the child, *or* (3) the Children have been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where, as here, the juvenile court concludes that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the Children, and there is sufficient evidence in the record supporting the juvenile court's conclusion, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See generally In re S.P.H.*, 806 N.E.2d at 882 (providing that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, DCS need only prove and the juvenile court need only find that one of the factors listed in that sub-section is true).

In determining whether the continuation of a parental relationship poses a threat to a child's well-being, a juvenile court should judge a parent's fitness to care for his child as of the time of the termination proceeding, taking into consideration evidence of changed conditions. *Bester*, 839 N.E.2d at 152. However, the court must also consider a parent's habitual pattern of conduct to determine whether there is a substantial probability of future

neglect or deprivation. *Id*. Again, a court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *See In re T.F.*, 743 N.E.2d at 773. Moreover, a juvenile court "'can reasonably consider the services offered by [DCS] to the parent and the parent's response to those services.'" *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003) (quoting *In re A.C.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997)).

Here, the juvenile court determined that the continuation of the parent-child relationship posed a threat to the Children's well-being. In making this determination, the juvenile court noted that Father is unavailable to parent and, given his lack of participation in services, has not demonstrated a willingness to parent. In support of its determination, the juvenile court found as follows:

> 7.  [Father] admitted to a history of domestic violence, a no contact order with [Mother] and the children, and educational neglect.
>
> ****
>
> 24.  There is a long history of domestic violence between [Mother] and [Father]….
>
> 35.  When not incarcerated, [Mother] and [Father] lived together at times and [Father] transported [Mother] to visits. [Mother]'s therapist described her running hot and cold toward [Father] and wanting to co-parent.
>
> 36.  On July 26, 2011, the [CHINS] Court changed the children's permanency plan from reunification to adoption finding that [Father] had not been visiting the children and was not participating in services….
>
> 38.  [Father] will be incarcerated for the next approximate ten months on a Class B Felony conviction of Dealing in Cocaine or Narcotics.
>
> 39.  [Father] would be on work release but escaped in January of 2013, and was re-incarcerated in March of 2013.
>
> 40.  [Father] is age thirty-three and has eleven convictions since he was an adult, including three convictions for Domestic Violence where [Mother] was involved.

9

41.   [Father] was referred services of drug and alcohol and domestic violence evaluations on two occasions but failed to participate.

42.   [Father] completed a parenting assessment. He may or may not have taken classes while incarcerated.

43.   [Father] completed one half of a psychological evaluation and was discharged from home-based services more than once.

44.   [Father] believes the children should be with their mother. He has not seen the children since February of 2011.

45.   At the beginning of the [CHINS] case, the children had significant behavior problems, including aggression and acting out. They lacked social skills.

46.   The children are in therapy and are now observed as having stabilized.

47.   [D.S.] and [N.S.] are placed together in a foster home which has become pre-adoptive.

48.   [K.S.] was placed in a separate therapeutic foster home because of concerns of her acting out sexually. The home became a good fit for [K.S.] and is now pre-adoptive.

49.   The children have resided in their respective homes since July of 2012 and appear happy, comfortable and bonded.

Appellant's App. pp. 60-63.[2]

In addition to evidence supporting the above-stated findings, the juvenile court heard evidence indicating that but for an approximate five-year period from 2004 to 2009, Father had "been in and out of jail" his entire adult life. Tr. p. 491. Father admitted that at the time of the evidentiary hearing, he could not provide for the Children's needs, could not provide adequate housing or supervision for the Children, or make sure the Children are safe. The juvenile court also heard evidence that the Children had previously demonstrated significant behavior problems; that these behavior problems were impacted by contact with Mother and Father; and that after visitation with Mother and Father stopped, the Children's behaviors stabilized and improved. Further, the juvenile court heard evidence that in 2012, Father informed Family Case Manager Shalonda Lyons ("Case Manager Lyons") that he did not

want to visit the Children because he had a warrant out for his arrest. Father also indicated to Case Manager Lyons that he did not want to participate in any services. When considered as a whole, we conclude that the evidence is sufficient to demonstrate a reasonable probability that the continuation of Father's parental relationship would pose a threat to the Children's well-being.

Moreover, it was within the province of the juvenile court, as the finder of fact, to minimize any contrary evidence of changed conditions in light of its determination that the continuation of Father's parent-child relationship with the Children was a threat to the Children's well-being. It is well-established that the juvenile court, acting as a trier of fact, was not required to believe or assess the same weight to the testimony as Father. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988); *A.S.C. Corp. v. First Nat'l Bank of Elwood*, 241 Ind. 19, 25, 167 N.E.2d 460, 463 (1960); *Haynes v. Brown*, 120 Ind. App. 184, 189, 88 N.E.2d 795, 797 (1949), *trans. denied*. Father's claim effectively amounts to an invitation for this court to reassess witness credibility and reweigh the evidence, which, again, we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## II. Whether DCS Presented Sufficient Evidence to Prove the Third Element That Is Required to Be Proven Before a Court May Order the Involuntary Termination of One's Parental Rights

Next, we address Father's claim that DCS failed to prove by clear and convincing evidence that termination of his parental rights was in the Children's best interests. We are mindful that in determining what is in the best interests of a child, the juvenile court is

---

[2] We note that Father does not challenge any of the above-stated findings made by the juvenile court.

11

required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id.* Furthermore, this court has previously determined that the testimony of the case worker or Guardian Ad Litem ("GAL") regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id.*; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

Here, the testimony establishes that the Children have a need for permanency and stability and that the termination of Father's parental rights would serve their best interests. Both Family Case Manager Shannon Taylor and the Children's GAL, Nancy Englert, testified that they believed that the termination of Father's parental rights was in the Children's best interests. In stating this belief, GAL Englert testified that she believed that a sense of permanency and stability was vital to the Children's well-being.

Regarding the Children's need for permanency and stability, GAL Englert testified that K.S. had been placed in seven or eight placements during the pendency of the underlying CHINS action. GAL Englert further testified that D.S. and N.S. had also been placed in numerous placements during the pendency of the underlying CHINS action. GAL Englert indicated that the Children have bonded with their current foster parents. GAL Englert further indicated that the Children have made statements suggesting that they feel safe in their current homes, want to be adopted by their current foster parents, and do not want to move again.

GAL Englert testified that Father had failed to engage in any services in a meaningful

way, did not visit the Children consistently, and had really made no progress in three and a half years. GAL Englert opined that giving Father more time would be harmful to the Children. In that regard, GAL Englert testified that:

> [A]t some point you look at these little faces and it's hard to keep going to them month after month after month and saying well …we still don't know what's going to happen, what do you want me to tell the judge? You know, at some point it's just not fair to them.

Tr. pp. 443-44 (ellipsis in original). GAL Englert further testified that:

> It's been three and a half years. And we've made no progress really with [Father] or with [Mother] and it just … it, like I said at the beginning, at what point do you feel like you've been fair, you've given people more than … more than a shot at doing this. And at some point the scales start to balance and you've got more harm coming to the children, you're not getting anywhere and really, when I look back on the case, as I said, I regret that we just kept trying and trying and trying because although we did it with good intentions, ultimately it kept the kids in the system longer.

Tr. p. 454 (ellipses in original). Case Manager Taylor also testified that she does not believe that Father should be given more time because Father is currently incarcerated, has had three years to comply with services but has not done so, and cannot provide for the Children's needs.

In addition, the evidence demonstrates that the Children have not returned to Father's care since they were removed from his and Mother's care on May 20, 2010, and Father has not even seen the Children since February of 2011. Father also acknowledged that he is presently unable to provide the necessary care and supervision for the Children. Furthermore, the juvenile court heard evidence that the Children's serious behavioral issues have stabilized and improved since their contact with Mother and Father has ceased.

13

The juvenile court did not have to wait until the Children were irreversibly harmed such that their physical, mental, and social development was permanently impaired before terminating Father's parental rights. *See In re C.M.*, 675 N.E.2d at 1140. In light of the testimony of Case Manager Taylor and GAL Englert, considered with Father's failure to complete services, seeming lack of interest in caring for or visiting with the Children, and continued lack of stability, we conclude that the evidence is sufficient to satisfy DCS's burden of proving that termination of Father's parental rights is in the Children's best interests. Again, Father's claim to the contrary merely amounts to an invitation for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## CONCLUSION

Having concluded that the evidence is sufficient to support the juvenile court's order terminating Father's parental rights to the Children, we affirm the judgment of the juvenile court.

The judgment of the juvenile court is affirmed.

BARNES, J., and BROWN, J., concur.